**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

AMEENA HUSSAIN, on behalf of herself and all others similarly situated,

Plaintiff,

v.

EMORTGAGE FUNDING, LLC,

Defendant.

No. 2:26-cv-02881-LK

Honorable Judge Lauren King

PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Noting Date:
November 18, 2026

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. TCPA's Do-Not-Call Provisions. .......... 2

B. Allegations. .......... 4

C. eMortgage's Motion .......... 4

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 5

A. Section 227(c)(5) Allows Ms. Hussain to Enforce the National Do-Not-Call Rule .......... 5

1. Section 227(c) itself describes the national database rules as regulations prescribed under that subsection .......... 6

2. Neither the 1992 deadlines nor the Do-Not-Call Implementation Act withdrew the FCC's authority .......... 7

3. The Ninth Circuit and courts in this Circuit have treated the rule as enforceable under § 227(c)(5). .......... 11

4. *Loper Bright* and *McLaughlin* do not change the analysis. .......... 13

B. Text Messages Are Calls Under § 227(c)(5), and Each Telemarketing Text Is a Violation of the Rule .......... 13

1. Controlling precedent holds that texts are calls, and eMortgage does not argue otherwise. .......... 14

2. Section 227(c)(5)(B) awards damages for "each such violation," and eMortgage's "threshold" and "remedy" distinction has no textual basis .......... 15

C. *Steidinger* does not bind this Court, and dismissing part of a damages theory is not Rule 12(b)(6) relief. .......... 17

D. *Chennette* Forecloses eMortgage's Argument That a Registered Cell Phone Cannot Be "Residential." .......... 18

1. *Chennette* binds this Court, and nothing in *Loper Bright* or *McLaughlin* is clearly irreconcilable with it. .......... 18

2. Reading § 227(c) independently confirms the result. .......... 20

E. The Complaint plausibly alleges a residential subscriber. .......... 21

F. Count II States a Claim Under Washington Law .......... 23

1. Count II pleads a CPA claim predicated on a CEMA violation, which is what *Wright* permits. .......... 23

2. *Wright* establishes injury and causation as a matter of law. .......... 24

3. Any deficiency could be cured by amendment. .......... 25

4. The Court Should Not Decline Supplemental Jurisdiction. .......... 25

V. CONCLUSION .......... 26

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Anthony v. Brian Marketing Group,*
2026 WL 2685650 (S.D. Fla. Sept. 11, 2026) ... 21

*Ardestani v. INS*,
502 U.S. 129 (1991) ... 9

*Arguello v. R.E.S.A., Inc.*,
2026 WL 3169713 (N.D. Cal. Oct. 22, 2026) ... 15, 20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ... 5

*AT&T Corp. v. Iowa Utils. Bd.*,
525 U.S. 366 (1999) ... 10

*Barnhart v. Peabody Coal Co.*,
537 U.S. 149 (2003) ... 7

*Brock v. Pierce County,*
476 U.S. 253 (1986) ... 7

*Carrodine v. Zupax Mktg. LLC*,
351 F.R.D. 164 (D. Nev. 2026) ... 12, 20

*Chennette v. Porch.com, Inc.*,
50 F.4th 1217 (9th Cir. 2022) ... *passim*

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
467 U.S. 837 (1984) ... 14, 19

*Coffey v. Fast Easy Offer, LLC*,
178 F.4th 480 (9th Cir. 2026) ... *passim*

*Dobronski v. CHW Grp., Inc.*,
2025 WL 2426370 (E.D. Mich. Aug. 21, 2025) ... 10, 13

*Dobronski v. Selectquote Ins. Servs.*,
773 F. Supp. 3d 373 (E.D. Mich. 2025) ... 10

*Doe v. United States*,
58 F.3d 494 (9th Cir. 1995) ... 22

*Dovberg v. Haller Enters., Inc.*,
No. 5:26-cv-4286, ECF No. 20, slip op. at 16 (E.D. Pa. Oct. 21, 2026) ... 10

*Fla. E. Coast Ry. LLC v. Fed. R.R. Admin.*,
186 F.4th 822 (11th Cir. 2026) .......... 7

*Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246 (9th Cir. 1997) .......... 5

*Gomez v. Campbell-Ewald Co.*,
768 F.3d 871 (9th Cir. 2014) .......... 19

*Harbers v. Eddie Bauer, LLC*,
415 F. Supp. 3d 999 (W.D. Wash. 2019) .......... 24

*Howard v. Republican National Committee*,
164 F.4th 1119 (9th Cir. 2026) .......... 14, 15, 17

*Internicola v. MortgagePros, LLC*,
2026 WL 3027393 (M.D. Fla. Sept. 24, 2026) .......... 5, 13

*Jackson v. Direct Bldg. Supplies LLC*,
2024 WL 184449 (M.D. Pa. Jan. 17, 2024) .......... 21

*Koeller v. OX AppSec Security, Inc.*,
2026 WL 2935851 (E.D. Mo. Sept. 30, 2026) .......... 21

*Lirones v. Leaf Home Water Sols., LLC*,
2024 WL 4198134 (N.D. Ohio Sept. 16, 2024) .......... 13

*Littman v. Mortgage One Funding LLC*,
2026 WL 3150829 (W.D. Wash. Oct. 21, 2026) .......... 12, 24

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) .......... *passim*

*Lowrey v. Twilio, Inc.*,
2026 WL 2958730 (W.D. Va. Oct. 1, 2026) .......... 21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......... 5

*McIntosh v. United States*,
601 U.S. 330 (2024) .......... 7

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) .......... *passim*

*Meade v. Profusion Cosmetics Corp.*,
2026 WL 2098093 (W.D. Wash. July 16, 2026) .......... 25

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) .................................................. 17, 19

*Newell v. JR Cap., LLC*,
791 F. Supp. 3d 571 (E.D. Pa. 2025) .................................................. 10

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .................................................. 8

*Ottensmeyer v. Chesapeake & Potomac Tel. Co.*,
756 F.2d 986 (4th Cir. 1985) .................................................. 21

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) .................................................. 14, 15, 17, 18

*Steidinger v. Blackstone Medical Services, LLC,*
182 F.4th 532 (7th Cir. 2026). .................................................. 17, 18

*Taha v. Momentive Software, Inc.*,
2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026) .................................................. 15

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*,
10 F.4th 869 (D.C. Cir. 2021) .................................................. 7

*Trim v. Reward Zone USA LLC*,
76 F.4th 1157 (9th Cir. 2023) .................................................. 15

*United States v. James Daniel Good Real Prop.*,
510 U.S. 43 (1993) .................................................. 7

*Wilson v. Better Mortg. Corp.*,
2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025) .................................................. 16, 17

*Wilson v. Cirkul Inc.*,
2026 WL 1508003 (D. Or. Apr. 14, 2026) .................................................. *passim*

*Wilson v. Hard Eight Nutrition LLC*,
804 F. Supp. 3d 1141 (D. Or. 2025) .................................................. *passim*

*Wright v. Lyft, Inc.*,
189 Wn.2d 718 (2017) .................................................. 23-25

**Statutes**

15 U.S.C. § 6153 .... 9
47 U.S.C. § 201(b) .... 10
47 U.S.C. § 225(d)(5) .... 17
47 U.S.C. § 227 .... *passim*
47 U.S.C. § 227(a)(4) .... 3, 14
47 U.S.C. § 227(b) .... 8, 12, 15
47 U.S.C. § 227(c) .... *passim*
47 U.S.C. § 227(c)(1) .... 2, 7, 8
47 U.S.C. § 227(c)(2) .... 3, 6-8
47 U.S.C. § 227(c)(3) .... *passim*
47 U.S.C. § 227(c)(3)(F) .... *passim*
47 U.S.C. § 227(c)(3)(I) .... 6
47 U.S.C. § 227(c)(4) .... 8
47 U.S.C. § 227(c)(5) .... *passim*
47 U.S.C. § 227(c)(5)(A)–(C) .... 4
47 U.S.C. § 227(e)(8) .... 17
47 U.S.C. § 227(i)(1) .... 17
Wash. Rev. Code § 19.190.030 .... 23
Wash. Rev. Code § 19.190.040 .... 23, 24
Wash. Rev. Code § 19.190.060 .... 4, 23

**Rules & Regulations**

47 C.F.R. § 64.1200(c) .... 4, 13
47 C.F.R. § 64.1200(c)(2) .... *passim*
47 C.F.R. § 64.1200(d) .... 13
47 C.F.R. § 64.1200(e) .... 3, 14
47 C.F.R. § 64.1200(f)(15) .... *passim*
47 C.F.R. § 64.2305(d) .... 21
Fed. R. Civ. P. 12(b)(6) .... *passim*

**Other Authorities**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
18 FCC Rcd. 14014 (2003) ("2003 Order") ........................................................... *passim*

## I. INTRODUCTION

Plaintiff Ameena Hussain ("Plaintiff") put her residential cell phone number on the National Do-Not-Call Registry herself. Dkt. 1 ¶¶ 20, 26. Defendant eMortgage Funding, LLC ("eMortgage" or "Defendant") sent mortgage solicitations to that number anyway: two text messages meant for someone named "Joanne," followed by two autodialed calls. *Id.* ¶¶ 40–48. When Ms. Hussain answered, she told eMortgage that she was not Joanne and that it should not call back. *Id.* ¶ 44. For purposes of its Rule 12(b)(6) motion, eMortgage does not dispute any of this. It argues instead that, even on these facts, the federal Do-Not-Call rule cannot be enforced by the people it protects. Several of its arguments are offered only "[a]lternatively" or "to the extent" they remain open under Ninth Circuit law. Dkt. 15 at 2, 12. None has merit.

*First*, eMortgage argues that the national Do-Not-Call rule, 47 C.F.R. § 64.1200(c)(2), is not among "the regulations prescribed under" 47 U.S.C. § 227(c) because the Federal Communications Commission ("FCC") adopted it after Congress passed the Do-Not-Call Implementation Act. But § 227(c) itself provides that its regulations "may require the establishment and operation of a single national database" of numbers whose subscribers object to telemarketing, and that such regulations shall "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database." 47 U.S.C. § 227(c)(3), (3)(F). That is the rule Ms. Hussain invokes. The FCC adopted it "[p]ursuant to our authority under section 227(c)," and the Ninth Circuit has described it as "promulgated pursuant to this authority." *Coffey v. Fast Easy Offer, LLC*, 178 F.4th 480, 481 (9th Cir. 2026). Nor did the deadlines Congress set for the FCC's first rulemaking end its authority to act later: a statutory deadline is a spur to prompt agency action, not a bar to later action.

*Second*, eMortgage asks the Court to hold that the two text messages are not "separately compensable." Dkt. 15 at 10. But eMortgage "does not ask the Court to decide whether text

messages can ever constitute calls," *id.*, and it acknowledges that the Ninth Circuit has held that they can. Section 227(c)(5) awards damages for "each such violation" of the regulations, and a telemarketing text to a registered number violates the regulation. Nor does Rule 12(b)(6) offer a vehicle for trimming a damages theory from a count that eMortgage concedes is adequately supported by two voice calls.

*Third*, eMortgage argues that the FCC could not extend the statute's protection for "residential telephone subscribers" to cell phones. The Ninth Circuit held otherwise in *Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022), which binds this Court and which neither *Loper Bright* nor *McLaughlin* overruled. Courts in this Circuit have rejected the identical argument since those decisions issued.

*Fourth*, eMortgage's challenge to Count II misreads the Complaint and the law. Count II pleads a violation of Washington's Consumer Protection Act ("CPA") predicated on a violation of the Commercial Electronic Mail Act ("CEMA"). The Washington Supreme Court has held that such a violation establishes the injury and causation elements of the CPA claim as a matter of law. And because Count I stands, eMortgage's *fifth* argument, which asks the Court to decline supplemental jurisdiction, never arises. The motion should be denied.

## II. BACKGROUND

### A. TCPA's Do-Not-Call Provisions.

Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers from the "intrusive invasion of privacy" posed by "[u]nrestricted telemarketing." *Coffey*, 178 F.4th at 481 (quoting TCPA § 2(5)). Section 227(c) directs the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), and to "prescribe regulations to implement methods and procedures for protecting the privacy rights described in such

paragraph," *id.* § 227(c)(2). It provides that "[t]he regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," and that, if the FCC requires such a database, the regulations shall "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database." *Id.* § 227(c)(3), (3)(F).

In 2003 the FCC created the registry, explaining that "[p]ursuant to our authority under section 227(c), we adopt a national do-not-call registry that will provide residential consumers with a one-step option to prohibit unwanted telephone solicitations." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14034 ¶ 28 (2003) ("2003 Order"). The implementing regulation provides that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). A "telephone solicitation" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(15); *accord* 47 U.S.C. § 227(a)(4). And the rule is "applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order." 47 C.F.R. § 64.1200(e).

The statute's private right of action belongs to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Such a person may sue "to enjoin such violation," "to recover for actual monetary loss from such a violation, or to receive up

to $500 in damages for each such violation, whichever is greater," or both. *Id.* § 227(c)(5)(A)–(C). A court may increase the award to as much as three times that amount if the defendant "willfully or knowingly violated the regulations." *Id.* § 227(c)(5).

**B. Allegations.**

Ms. Hussain is a Washington resident with a 425-area-code telephone number. Dkt. 1 ¶¶ 20–22. She uses the number "for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments)," has not used it for business, and has been its user for approximately two years. *Id.* ¶¶ 28–33. She "personally placed her telephone number on the National Do-Not-Call Registry on April 2, 2026," and it was never removed. *Id.* ¶¶ 26–27.

eMortgage is a mortgage lender that markets through telemarketing. *Id.* ¶¶ 34–38. On July 9 and July 13, 2026, it sent text messages to Ms. Hussain's number advertising mortgage products. *Id.* ¶¶ 40–42, 48. On July 16, 2026, it placed an automatically dialed call to the number. *Id.* ¶ 43. Ms. Hussain answered, said that she was not "Joanne," and told the caller not to call back. *Id.* ¶ 44. A second automatically dialed call, from a different number, followed; she rejected it, then called back and told eMortgage not to call again. *Id.* ¶¶ 45–46. The messages were intended for "Joanne." *Id.* ¶ 47. Ms. Hussain never consented to any of the communications. *Id.* ¶¶ 18, 50.

Ms. Hussain sues for herself and a putative class. Count I seeks relief under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). *Id.* ¶¶ 64–68. Count II alleges violations of CEMA, RCW 19.190.060, and the CPA, chapter 19.86 RCW. *Id.* ¶¶ 69–73.

**C. eMortgage's Motion.**

eMortgage moved to dismiss under Rule 12(b)(6). Dkt. 15. It does not argue that the Complaint fails to allege that Ms. Hussain's number was registered, that the communications were solicitations, or that she did not consent. It argues that (A) § 227(c)(5) does not reach the national Do-Not-Call rule; (B) the Court should hold that the text messages are not separately compensable;

(C) the FCC lacked authority to treat cell phones as residential; (D) Count II fails; and (E) the Court should decline supplemental jurisdiction over Count II if it dismisses Count I. *Id.* at 5–14.

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Ninth Circuit has held that, "[t]he Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When ruling on motion to dismiss, courts must "accept[] as true all nonconclusory factual allegations in the complaint," and "interpret the TCPA under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Coffey*, 178 F.4th at 482–83 (quoting *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025)).

## IV. ARGUMENT

### A. Section 227(c)(5) Allows Ms. Hussain to Enforce the National Do-Not-Call Rule.

eMortgage's lead argument is that 47 C.F.R. § 64.1200(c)(2) falls outside "the regulations prescribed under this subsection," 47 U.S.C. § 227(c)(5), because the FCC adopted the national registry in 2003, after Congress enacted the Do-Not-Call Implementation Act. Dkt. 15 at 5–8. The argument rests on a single out-of-circuit district court decision, *Internicola v. MortgagePros, LLC*, No. 6:25-cv-01613-AGM-LHP, 2026 WL 3027393, at *3–4 (M.D. Fla. Sept. 24, 2026), that eMortgage concedes is "not binding on this Court." Dkt. 15 at 8. It fails for four reasons.

**1. Section 227(c) itself describes the national database rules as regulations prescribed under that subsection.**

The text of § 227(c)(5) provides a private right of action for telephone calls "in violation of the regulations prescribed under this subsection." Section 227(c)(3) says what those regulations may include: "[t]he regulations required by paragraph (2) may require the establishment and operation of a single national database," and, if they do, "such regulations shall," among other things, "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database." 47 U.S.C. § 227(c)(3), (3)(F). Congress thus wrote the national database into § 227(c) itself. The statute describes the operation of that database as serving "compliance with the regulations prescribed under this subsection," 47 U.S.C. § 227(c)(3)(I), which is the very phrase § 227(c)(5) uses to define the private right of action. And § 227(c)(5) gives defendants an affirmative defense for "reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection," which are the same telephone solicitations that § 227(c)(3)(F) directs the FCC to prohibit.

Indeed, 47 U.S.C. 64.1200(c)(2) does precisely what § 227(c)(3)(F) describes: it prohibits telephone solicitations to numbers on the national registry. The FCC acted "[p]ursuant to our authority under section 227(c)." 2003 Order, 18 FCC Rcd. at 14028 ¶ 16, 14034 ¶ 28 ("Pursuant to section 227(c)(3), the Commission 'may require the establishment and operation of a single national database . . . .'"). eMortgage itself acknowledges that "§ 227(c)(3)–(4) contemplated the possibility of a national do-not-call database." Dkt. 15 at 6.

The distinction between the FCC's authority to prescribe regulations and Congress's decision to authorize private enforcement is also apparent from the language Congress chose. Section 227(c)(2) establishes a deadline for the FCC to complete its initial rulemaking, while §

227(c)(5) authorizes suit for violations of "the regulations prescribed under this subsection," without restricting that remedy to regulations adopted within nine months of the TCPA's enactment. 47 U.S.C. § 227(c)(2), (5). Congress knew how to impose a temporal limitation and did so expressly in the same subsection. It did not incorporate that limitation into the private right of action. Reading one into § 227(c)(5) would add a restriction Congress omitted and would exclude the very national database protections that § 227(c)(3) expressly contemplated.

**2. Neither the 1992 deadlines nor the Do-Not-Call Implementation Act withdrew the FCC's authority.**

eMortgage reads the deadlines in § 227(c)(1) and (2), which required the FCC to begin a rulemaking within 120 days and conclude it within nine months of December 20, 1991, as a sunset: after the FCC's 1992 rulemaking, it says, the FCC could no longer prescribe regulations "under" § 227(c). Dkt. 15 at 5–6. eMortgage fails to cite any decisions or legal authority and fails to point to language in § 227(c) to support this argument. Contrary to Defendant's assertions, that is not how statutory deadlines work. When Congress sets a deadline for rulemaking, the deadline is a "time-related directive" that functions "as a spur to prompt action, not as a bar to tardy completion of . . . business." *Fla. E. Coast Ry. LLC v. Fed. R.R. Admin.*, 186 F.4th 822, 849–50 (11th Cir. 2026) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 152 (2003)). A deadline to act is not a bar to the power to act, and it is not "a jurisdictional limit precluding action later." *Barnhart*, 537 U.S. at 158. The Supreme Court applied the same principle before *Barnhart*, *see United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993); *Brock v. Pierce County*, 476 U.S. 253 (1986), and the Supreme Court and the courts of appeals have applied it since, *see McIntosh v. United States*, 601 U.S. 330, 339 (2024); *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 874 (D.C. Cir. 2021); *Norton v. S. Utah Wilderness*

*All.*, 542 U.S. 55, 65 (2004). Congress uses deadlines this way routinely, to spur prompt agency action, and eMortgage fails to identify how § 227(c) is different.

The text of § 227(c)(1) and (c)(2) tells the FCC when to "initiate" and "conclude" its first rulemaking proceeding. 47 U.S.C. § 227(c)(1)–(2). Neither section says that the FCC's authority lapses when the deadline passes or that regulations prescribed afterward are void, and § 227(c)(5) enforces "the regulations prescribed under this subsection," without a temporal limit. Indeed, § 227(c)(4) provides that "[i]f the Commission determines to require the database mechanism…the Commission shall" take specified steps. Neither § 227(c)(3) or (4) requires the Commission to take those steps during the initial rulemaking proceeding or by any specified date. That the FCC chose not to adopt a database in 1992 shows only that the option remained open.

The original TCPA confirms that the nine-month deadline was not a limitation on the FCC's continuing rulemaking authority. Although § 227(c)(2) contains an express deadline, the 1991 Act separately required the FCC to prescribe regulations implementing "the amendments made by this section" within nine months of enactment. Pub. L. No. 102-243, § 3(a), (c)(1), 105 Stat. 2394, 2395, 2402 (1991). That directive encompassed § 227(b) and (c), thus, Congress imposed the same initial rulemaking deadline on both sets of regulations. If the expiration of that deadline extinguished the FCC's authority to adopt additional regulations under § 227 (c), the same reasoning would call into question regulations adopted under § 227 (b) after 1992. Nothing in the statutory text supports that consequence. The deadlines governed when the FCC was required to act initially, not whether it retained authority to implement the TCPA thereafter.

Congress then confirmed that the national registry would come out of the FCC's TCPA proceeding. As the FCC explained, the Do-Not-Call Implementation Act "requires the FCC to issue a final rule in its ongoing TCPA proceeding within 180 days of enactment," and Congress "recognized that because the FCC is bound by the TCPA, it would not be possible for the FCC to

adopt rules that are identical to those of the FTC in every instance." 2003 Order, 18 FCC Rcd. at 14027 ¶ 15. The FCC acted "[b]ased on Congress's directives in the TCPA and the Do-Not-Call Act." *Id.* at 14018 ¶ 3. eMortgage concedes that 15 U.S.C. § 6153 "expressly refers to the FCC's pending proceeding as one initiated under the TCPA." Dkt. 15 at 7. That concession is fatal to the premise that Congress meant the FCC to act outside the TCPA: the later statute directed the FCC to finish a TCPA proceeding, and the rule the FCC adopted is a rule under the TCPA. eMortgage's assertion that this reference "does not necessarily establish" that the rule was "prescribed under" § 227(c) is not a textual argument.

It does not matter that the Do-Not-Call Implementation Act may have supplied a second source of direction because § 227(c)(5) ties the remedy to regulations "prescribed under this subsection," and, as shown above, § 227(c) itself describes this regulation. A rule does not cease to be a § 227(c) regulation because another statute also told the agency to finish it, any more than a regulation ceases to be one issued "under" a congressional mandate because more than one source of authority supports it. *Cf. Ardestani v. INS*, 502 U.S. 129, 135 (1991) (explaining that there can be multiple sources of authority to promulgate regulations "under" a congressional mandate).

Nor does eMortgage's observation that regulatory authority does not necessarily establish a private remedy advance its argument. Dkt. 15 at 7. Ms. Hussain does not contend that every valid FCC regulation is privately enforceable merely because the FCC possessed authority to adopt it. Congress itself supplied the private remedy in § 227(c)(5), expressly authorizing an action for violations of regulations prescribed under subsection (c). The relevant inquiry is therefore not whether the Court should infer a private right of action from the FCC's rulemaking authority, but whether § 64.1200(c)(2) falls within the category of regulations Congress made privately enforceable. It does. Section 227(c)(3) expressly contemplates a national database, directs that

regulations prohibit solicitations to numbers included in that database, and describes compliance with those requirements using the same statutory language that appears in § 227(c)(5). The fact that Congress subsequently directed the FCC to complete its TCPA rulemaking does not remove the resulting regulation from the express remedy Congress had already enacted.

The FCC's power to implement § 227(c) is not subject to the 1992 deadlines. The Communications Act independently authorizes the Commission to make rules to carry out the Act, 47 U.S.C. § 201(b), and that grant "means what it says" and reaches provisions added to the Act after it was first enacted. *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 377–78 (1999). Consistent with that, courts have held that rules the FCC adopted long after 1992 are enforceable pursuant to § 227(c)(5). The FCC's caller-identification rule is a close parallel to the Do-Not-Call rule. The FCC "initially declined to adopt caller ID regulations as network technologies," but it adopted one "a little over one decade later," *Dovberg v. Haller Enters., Inc.*, No. 5:26-cv-4286, ECF No. 20, slip op. at 16 (E.D. Pa. Oct. 21, 2026), and courts have held that "a violation of [Section] 64.1601(e) is clearly a violation of regulations prescribed under [Section] 227(c)," *id.* at 15 (quoting *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 582 (E.D. Pa. 2025)). *See also Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 377, 380 (E.D. Mich. 2025) (concluding that the rule was most likely promulgated pursuant to § 227(c), so that violations are actionable under § 227(c)(5)); *Dobronski v. CHW Grp., Inc.*, No. 24-cv-11649, 2025 WL 2426370, at *8 (E.D. Mich. Aug. 21, 2025) (following *Selectquote*). The national registry followed the same path. The FCC declined to establish a database in 1992, Dkt. 15 at 6, and adopted one in 2003, 2003 Order, 18 FCC Rcd. at 14034 ¶ 28. If a caller-identification rule adopted a decade after the 1992 rulemaking is a regulation "prescribed under" § 227(c), so is the national Do-Not-Call rule. Thus, Congress expressly contemplated a national database of subscribers who objected to telephone solicitations, directed the FCC to prohibit solicitations to numbers included in that database, and

provided a private remedy for violations of regulations prescribed under subsection (c). 47 U.S.C. § 227(c)(3)(F), (5). Yet under eMortgage's interpretation, the FCC could establish the very database Congress contemplated, telemarketers would be prohibited from soliciting registered subscribers, and those subscribers would nevertheless lose the statutory remedy solely because the FCC exercised its authority in 2003 rather than 1992. Nothing in § 227(c) suggests Congress intended the availability of a consumer's remedy to depend on that chronology. The better reading gives effect to each provision: the initial deadline required prompt agency action, § 227(c)(3) authorized the national database, and § 227(c)(5) permits consumers to enforce the resulting regulations.

**3. The Ninth Circuit and courts in this Circuit have treated the rule as enforceable under § 227(c)(5).**

The Ninth Circuit's own description of the statute is the framework this Court applies. In *Coffey*, decided in June 2026, the court explained that Congress "authorized the FCC to issue regulations 'prohibit[ing] any person from making or transmitting a telephone solicitation to the telephone number of any subscriber' listed in the registry," that "[t]he FCC regulations promulgated pursuant to this authority prohibit a person or company from 'initiat[ing] any telephone solicitation' to a 'residential telephone subscriber who has registered'" on the registry, and that "[t]he TCPA provides a private right of action to any 'person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations' promulgated under the statute." 178 F.4th at 481. The court then reversed the dismissal of a § 227(c)(5) claim brought by a plaintiff who had registered her personal cell phone number and received calls and text messages. *Id.* at 481–84. *Coffey* did not have occasion to address eMortgage's argument, because no one made it. But the court's account of how the statute,

the regulation, and the private right of action fit together cannot be squared with eMortgage's theory.

*Chennette* is to the same effect. The Ninth Circuit there described the TCPA as prohibiting "telephone solicitations sent to residential telephone subscribers who have registered their phone numbers on the national do-not-call registry, *see id.* § 227(c)," and observed that "[b]oth subsections provide private causes of action for damages and injunctive relief." 50 F.4th at 1219–20. It explained that "Section 227(c) . . . directs the FCC to promulgate regulations under which 'residential subscribers' may request that their telephone numbers be included in a national do-not-call registry and database, and to prohibit telephone solicitation to 'any subscriber included in such database.'" *Id.* at 1223. It then reversed the dismissal of the plaintiffs' TCPA claims, holding that "plaintiffs have statutory standing under § 227(b) and (c)." *Id.* at 1226.

District courts in this Circuit, all writing after *Loper Bright*, have proceeded the same way. *Wilson v. Hard Eight Nutrition LLC*, 804 F. Supp. 3d 1141, 1146, 1151 (D. Or. 2025) ("In 2003, in response to Congress's instruction, the FCC created the Do-Not-Call Registry," and "[t]he TCPA provides a private right of action for do-not-call violations."); *Wilson v. Cirkul Inc.*, 2026 WL 1508003, at *2 (D. Or. Apr. 14, 2026) (findings and recommendation) ("Section 227(c) of the TCPA authorized the FCC to create a 'single national database' . . . . In response, the FCC created the National Do-Not-Call Registry."); *Carrodine v. Zupax Mktg. LLC*, 351 F.R.D. 164, 168–69 (D. Nev. 2026) (applying the presumption that a cell phone user "whose phone number is registered on the DNC List" is a residential subscriber "for a claim made under Section 227(c) of the TCPA"); *Littman v. Mortgage One Funding LLC*, No. 3:26-cv-05548-BHS, 2026 WL 3150829, at *2–3 (W.D. Wash. Oct. 21, 2026) (declining to dismiss a do-not-call claim against a mortgage company). eMortgage identifies no appellate decision adopting its view.

Courts outside this Circuit agree. *See Dobronski v. CHW Grp.*, 2025 WL 2426370, at *5–7 (denying a motion to dismiss do-not-call claims under § 64.1200(c) and (d), which it described as "the FCC regulations developed to implement § 227(c) of the TCPA"); *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-cv-02087, 2024 WL 4198134, at *1 (N.D. Ohio Sept. 16, 2024) (claims "arise under § 227(c) of the TCPA and the regulations at 47 C.F.R. § 64.1200(c) and (d)"); *Dovberg*, slip op. at 17–18 (stating that "the Court found that Section 227(c)(5) provides a private right of action for violations of Section 64.1200(c)(2)"); *cf. Charvat v. NMP, LLC*, 656 F.3d 440, 443–44 (6th Cir. 2011) (treating the FCC's do-not-call procedures rule, 47 C.F.R. § 64.1200(d), as a regulation issued under § 227(c)). *Internicola*, the lone contrary decision, is out of circuit, is not binding, and is at odds with these decisions. *See* Dkt. 15 at 8 (citing *Internicola*, 2026 WL 3027393, at *3–4).

#### 4. *Loper Bright* and *McLaughlin* do not change the analysis.

eMortgage invokes *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin* for the proposition that the Court must interpret the statute independently. Dkt. 15 at 7. Ms. Hussain agrees. The reading set out above is an independent reading of the statutory text, and it does not depend on deference to the FCC's characterization of its own authority. Neither decision suggests that a regulation the statute itself describes becomes something else because the agency also cited another source of direction, and neither disturbs the Ninth Circuit's description of this very statute. Count I should not be dismissed on this ground.

### B. Text Messages Are Calls Under § 227(c)(5), and Each Telemarketing Text Is a Violation of the Rule.

eMortgage's second argument is that § 227(c)(5) does not authorize separate statutory damages for the text messages because Ms. Hussain also alleges two voice calls. Dkt. 15 at 8. The

argument has no footing in the statute's text or in Ninth Circuit precedent, and it is not a ground for dismissing any claim.

**1. Controlling precedent holds that texts are calls, and eMortgage does not argue otherwise.**

Under 47 U.S.C. § 227 and 47 C.F.R. § 64.1200, a "telephone solicitation" is defined as "the initiation of a telephone call or message." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). The Do-Not-Call rule applies to "telephone solicitations or telemarketing calls or text messages to wireless telephone numbers," *id.* § 64.1200(e). The FCC has explained that the restriction "encompasses both voice calls and text calls to wireless numbers." 2003 Order, 18 FCC Rcd. at 14115 ¶ 165. And in a § 227(c)(5) case involving "phone calls and text messages," the Ninth Circuit has held that the plaintiff had pleaded that the "messages at issue" were "telephone solicitations" and reversed a Rule 12(b)(6) dismissal. *Coffey*, 178 F.4th at 481, 484.

eMortgage argues that § 227(c) is limited to telephone calls and does not authorize additional statutory damages for text messages8, 10. However the Ninth Circuit has held "that a text message is a 'call' within the meaning of the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). The court reached that result by giving the word its ordinary meaning, which it took from the dictionary: to "communicate with or try to get into communication with a person by a telephone." *Id.* at 953–54. And the court reasoned that "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Id.* at 954. The Ninth Circuit recently reaffirmed the rule after *Loper Bright* and recognized that *Satterfield* "framed our holding . . . in terms of the then-applicable deference required to be given to the FCC's construction," but concluded that "it is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference." *Howard v. Republican*

*National Committee*, 164 F.4th 1119. 1122-23 (9th Cir. 2026). Ultimately, the panel held that "a 'text message' constitutes a 'call' within the meaning of the TCPA." *Id.* at 1121.

eMortgage's only response is that these decisions "arose under § 227(b)." Dkt. 15 at 9. Courts applying them have continuously rejected this argument. As the court in *Cirkul* explained, "the language in *Howard* is not limited to § 227(b); it concerns the more general definition of a call. And it controls here." 2026 WL 1508003, at *3. *Accord Taha v. Momentive Software, Inc.*, 2026 U.S. Dist. LEXIS 54376, at *7–8 (C.D. Cal. Mar. 11, 2026) ("neither *Satterfield* nor *Howard* elected to use language to limit the scope of their holdings"); *Arguello v. R.E.S.A., Inc.*, 2026 WL 3169713, at *2–3 (N.D. Cal. Oct. 22, 2026) (applying the presumption of consistent usage and concluding that to "receive" a "telephone call" under § 227(c)(5) "applies to text messages the same as 'to make any call' and 'to initiate any telephone call' within the meaning of § 227(b)"). Indeed, the Ninth Circuit has already distinguished "text calls" from "voice calls" as two kinds of calls: "while we have deferred to the FCC's reasonable interpretation that a text is a call under the TCPA, we have nevertheless distinguished between 'text calls' and 'voice calls.'" *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1163 (9th Cir. 2023). If Congress had wanted § 227(c)(5) to reach only voice calls, "it would have used the phrase 'voice call,' rather than 'telephone call.'" *Taha*, 2026 U.S. Dist. LEXIS 54376, at *7–8.

**2. Section 227(c)(5)(B) awards damages for "each such violation," and eMortgage's "threshold" and "remedy" distinction has no textual basis.**

Alternatively, eMortgage's argues that although the two voice calls made to Plaintiff's telephone number satisfy the statute's threshold of "more than one telephone call," § 227(c)(5)(B) does not authorize "additional statutory damages for each text message" because the threshold and the remedy are "analytically distinct." Dkt. 15 at 10–11. The statute does not support the distinction.

The "more than one telephone call" language appears in the lead-in clause of § 227(c)(5), which defines who may sue. The damages clause uses different words. It authorizes "an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation." 47 U.S.C. § 227(c)(5)(B). "Such violation" refers back to clause (A)'s "violation of the regulations prescribed under this subsection." The damages clause thus does not count "calls." It counts violations of the regulation. And the regulation is violated whenever a person "initiate[s] any telephone solicitation" to a registered number, 47 C.F.R. § 64.1200(c)(2), a term that by definition includes "the initiation of a telephone call *or message* for the purpose of encouraging the purchase . . . of . . . services," *id.* § 64.1200(f)(15) (emphasis added). A text advertising a mortgage product to a registered number is such a solicitation, and it violates the rule, whether it is called a "call" or a "message." Reading "each such violation" to exclude it would require adding words to the statute, such as "each such violation *consisting of a voice call*," that Congress did not write.

This textual point holds even if one accepts, for argument's sake, that texts do not count toward the "more than one telephone call" threshold. Once the threshold is satisfied, here by two voice calls that eMortgage assumes suffice, Dkt. 15 at 10, the damages clause awards recovery for "each such violation" of the regulation, and a telemarketing text to a registered number is one. eMortgage's contrary reading depends on treating a word that appears only in the lead-in clause as though it also defined the remedy. And it is internally inconsistent. If, as eMortgage assumes, Congress's use of "call" in the threshold clause is broad enough to count the voice calls, then the same word must have the same meaning in the same sentence when the question is whether the texts are among the communications for which the statute provides relief. *See Wilson v. Better Mortg. Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025) ("The

contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone.").

eMortgage's reliance on other parts of § 227 does not help its argument. eMortgage points to §§ 227(e)(8) and 227(i)(1), which refer to both calls and text messages. Dkt. 15 at 9. But those provisions address caller-identification and information-sharing, not the Do-Not-Call rules, and a later Congress's choice to spell out "text message" in them says nothing about what "telephone call" meant when § 227(c) was enacted. *Satterfield* answered that question by looking to the ordinary meaning of "call," 569 F.3d at 953–54, and *Howard* confirmed it, 164 F.4th at 1122–23. Text-based communication over telephone lines was also familiar to Congress in 1991. The Americans with Disabilities Act, enacted a year earlier, required telephone companies to provide text-based services for deaf and hard-of-hearing users alongside "voice transmission services," and it referred to conversations conducted through those services as "call[s]." 47 U.S.C. § 225(d)(5) ("the duration of the call"). A "telephone call" could therefore mean something other than a voice call when Congress used the term in the TCPA. *See Better Mortg.*, 2025 WL 3493815, at *5.

### C. ***Steidinger*** does not bind this Court, and dismissing part of a damages theory is not Rule 12(b)(6) relief.

eMortgage cites *Steidinger v. Blackstone Medical Services*, 182 F.4th 532, 535–40 (7th Cir. 2026), which held that § 227(c)(5) does not reach "unwanted text messages." Dkt. 15 at 9, 11. That decision is not the law of this Circuit, and it cannot be reconciled with *Satterfield* and *Howard*, which are. A Ninth Circuit decision remains binding unless intervening authority is "clearly irreconcilable" with it, *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), and a decision of a sister circuit is not intervening authority from a court of last resort. Where *Steidinger* reasoned that "modern-day text messages are better understood as messages, not calls," 182 F.4th at 536–37, the Ninth Circuit has reasoned otherwise from the same statutory text, holding that the

prohibition applies to "any call, regardless of whether that call is communicated by voice or text." *Satterfield*, 569 F.3d at 954. Moreover, *Steidinger* asked whether text messages are "telephone call[s]" under § 227(c)(5), and the court described the "crux" of that complaint as "the receipt of numerous text messages." 182 F.4th at 535. It does not discuss the damages clause on which eMortgage's alternative argument depends. And eMortgage, which cites *Steidinger* but disclaims asking the Court to hold that texts are not calls, Dkt. 15 at 10, does not contend otherwise.

Finally, even if eMortgage were correct about the texts, the result would not be dismissal of any claim. Rule 12(b)(6) asks whether a complaint states a claim, and eMortgage assumes that Count I does so on the strength of two voice calls. Dkt. 15 at 10. What it asks for instead is a ruling that Count I be dismissed "to the extent it seeks separate statutory recovery predicated on those messages." *Id.* at 11. That is a request to resolve the measure of damages before any record exists, in an action in which Ms. Hussain seeks relief on behalf of a class defined by "two or more telephone calls." Dkt. 1 ¶ 53. The Court should decline to do so now.

**D. *Chennette* Forecloses eMortgage's Argument That a Registered Cell Phone Cannot Be "Residential."**

eMortgage next argues that the FCC "cannot expand the statutory category of residential telephone subscribers beyond Congress' authorization" to include wireless subscribers. Dkt. 15 at 11–12. It requests dismissal on that ground only "to the extent the issue remains open under *Chennette*," *id.* at 12, and "under controlling Ninth Circuit precedent," *id.* at 2. The issue is not open.

**1. *Chennette* binds this Court, and nothing in *Loper Bright* or *McLaughlin* is clearly irreconcilable with it.**

In *Chennette*, plaintiffs who had registered their cell phone numbers on the national registry sued defendants for TCPA violations under § 227(c). The Ninth Circuit considered the FCC's 2003 determination that "it is more consistent with the overall intent of the TCPA to allow wireless

subscribers to benefit from the full range of TCPA protections," and it noted that the defendants had "conceded that cell phones can be 'residential' for purposes of § 227(c)." *Chennette*, 50 F.4th at 1223. It then held: "Relying on the FCC's regulations and orders, we agree with the view of the majority of the district courts and conclude that a presumptively residential cell phone can be residential even when used for both personal and business purposes." *Id.* at 1224. And: "In the absence of FCC guidance on this precise point, we hold that plaintiffs' registered cell phones that are used for both personal and business purposes are presumptively 'residential' within the meaning of § 227(c)." *Id.* at 1225. Those are holdings about what § 227(c) means.

eMortgage contends that *Chennette* "did not independently decide whether the FCC possessed statutory authority" to establish the presumption. Dkt. 15 at 11–12. Yet, courts in this circuit have already rejected this same argument, premised on the claim that *Chennette* "did not construe § 227(c) but deferred entirely to the FCC's interpretation." *Hard Eight,* 804 F. Supp. 3d 1141, 1147. And even if *Chennette* had relied on the agency's views, it would remain binding. A court is "bound by our prior decisions" unless "the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 875 (9th Cir. 2014) (citing *Miller*, 335 F.3d at 900). *Loper Bright* is not irreconcilable with *Chennette* because it expressly preserved prior decisions that relied on *Chevron*. *See Loper Bright*, 603 U.S. at 412 ("[W]e do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology." . And *McLaughlin* held that district courts are not bound by the FCC's interpretations in enforcement proceedings, not that they may disregard Ninth Circuit precedent that reached a result in harmony with the agency's. *See Hard Eight*, 804 F. Supp. 3d at 1147 (court

must afford "appropriate respect to the agency's interpretation" (quoting *McLaughlin*, 606 U.S. at 155)); *Coffey*, 178 F.4th at 482–83.

Courts in this Circuit have so held. *Cirkul* rejected the argument that *Loper Bright* and *McLaughlin* undermine *Chennette* and concluded that § 227(c) applies to cellular telephones. 2026 WL 1508003, at *5–6. *Hard Eight* did the same. 804 F. Supp. 3d at 1147–51. And *Carrodine* applied *Chennette* this year: "A cell phone user whose phone number is registered on the DNC List is presumed to be considered a residential telephone subscriber for a claim made under Section 227(c) of the TCPA." 351 F.R.D. at 168–69. *See also Arguello*, 2026 WL 3169713, at *2–3 ("the Ninth Circuit has agreed with the FCC's view that cell phones are 'presumptively residential for purposes of § 227(c)'" (quoting *Chennette*, 50 F.4th at 1225)).

**2. Reading § 227(c) independently confirms the result.**

Even without deference, the answer is the same. Section 227(c) protects "residential telephone subscribers," a phrase that, as *Hard Eight* explained, "indicates a specific use, a personal or private use, not a specific transmission technology." 804 F. Supp. 3d at 1150. Congress addressed cellular service in § 227(b), which regulates equipment and technologies, and it separately addressed subscribers' privacy in § 227(c); as the court explained, "[b]ecause the two sections are not comparable in scope or structure, they cannot be compared apples-to-apples." *Id.* at 1149. That § 227(b) mentions cellular service therefore does not exclude cell phones from § 227(c). eMortgage's citation to § 227(b)(1)(A)(iii) and (b)(1)(B), Dkt. 15 at 11, assumes the opposite. As the court concluded after considering the same arguments: "In sum, without deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision, Section 227(c)." *Hard Eight*, 804 F. Supp. 3d at 1151.

The FCC's regulations and the history of the term point the same way. The FCC defines a residential subscriber as "a subscriber to telephone exchange service that is not a business subscriber," 47 C.F.R. § 64.2305(d); *see* 14 FCC Rcd. 15550, 15692 (1999), a definition that turns on the service the customer buys, not on the device or its location. Section 227(c) tracks that usage. As another court put it, "[h]ad Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a 'residential telephone line,' as Congress used that term in the preceding subsection." *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *6 (M.D. Pa. Jan. 17, 2024) (emphasis omitted), *quoted in Hard Eight*, 804 F. Supp. 3d at 1149. The distinction between business and residential service also predates the TCPA, and it has long turned on use rather than location. *See Ottensmeyer v. Chesapeake & Potomac Tel. Co.*, 756 F.2d 986, 989 n.4 (4th Cir. 1985) (classifying service as business or residential according to its use, explaining that service may be classified as "residen[tial]" "where the primary use of the service is of a domestic nature").

eMortgage cites three out-of-circuit district court decisions that are not binding on this Court, and cannot displace *Chennette*. Dkt. 15 at 12 (citing *Anthony v. Brian Marketing Group*, 2026 WL 2685650 (S.D. Fla. Sept. 11, 2026); *Koeller v. OX AppSec Security, Inc.*, 2026 WL 2935851 (E.D. Mo. Sept. 30, 2026); *Lowrey v. Twilio, Inc.*, 2026 WL 2958730 (W.D. Va. Oct. 1, 2026)).

**E. The Complaint plausibly alleges a residential subscriber.**

The Complaint alleges that Ms. Hussain's number is "a residential, non-commercial telephone number," Dkt. 1 ¶ 20; that she personally registered it on the national registry, *id.* ¶ 26; that she uses it "for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments)," *id.* ¶ 28; that she does not use it for business, is not

associated with any business that uses it, is not reimbursed for it, and does not deduct it for tax purposes, *id.* ¶¶ 29–30, 32–33; and that she has been its user for approximately two years, *id.* ¶ 31. Those allegations place her squarely within *Chennette*'s presumption, which applies even to plaintiffs whose phones are used for business and personal reasons. 50 F.4th at 1225. A plaintiff whose registered cell phone is presumptively residential has pleaded the point at the motion-to-dismiss stage, and a defendant may attempt to rebut the presumption after discovery. *Id.* at 1225–26; *cf. Hard Eight*, 804 F. Supp. 3d at 1151 (allegations of registration, repeated texts, personal and household use, and no business payment for the phone sufficed).

eMortgage observes in its statement of facts that the Complaint "does not allege that Plaintiff is the subscriber or account holder for the number." Dkt. 15 at 3. It never develops that observation into an argument, and elsewhere it asserts that "Plaintiff is a wireless subscriber." *Id.* at 12. Section 227(c)(5) gives its remedy to "[a] person who has received more than one telephone call," and the Complaint alleges that Ms. Hussain is that person: she registered the number, has used it for two years, and received the communications. Dkt. 1 ¶¶ 26, 31, 40–46. The FCC's presumption extends to "wireless subscribers who ask to be put on the national do-not-call list." 2003 Order, 18 FCC Rcd. at 14039 ¶ 36. Drawing the reasonable inferences in Ms. Hussain's favor, as the Court must, the Complaint plausibly alleges that she is the residential subscriber the registry protects. If the Court concludes otherwise, any dismissal should be without prejudice and with leave to amend. *See Cirkul*, 2026 WL 1508003, at *6 (leave to amend is proper unless "the pleading could not possibly be cured by the allegation of other facts") (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## F. Count II States a Claim Under Washington Law.

### 1. Count II pleads a CPA claim predicated on a CEMA violation, which is what *Wright* permits.

Count II of the Complaint alleges that eMortgage violated CEMA by sending "electronic commercial text messages to telephone numbers assigned to Plaintiff and other Washington residents for cellular telephone or pager service," Dkt. 1 ¶¶ 70, 72, and that a CEMA violation is a "per se" violation of the CPA, *id.* ¶ 71 (citing RCW 19.190.100 and *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 406 P.3d 1149 (2017)). Count II is captioned "Violations of the WA CEMA and CPA." That is the structure *Wright* describes. Although the text-message provision, RCW 19.190.060, does not use the phrase "per se violation," it "contains identical language to [RCW 19.190].030 that declares practices covered under the sections to be violations of the CPA," and the Washington Supreme Court held that a recipient of such messages proceeds under the CPA with injury and causation established by RCW 19.190.040. *Wright*, 189 Wn.2d at 727–28, 731–32. The Washington Supreme Court also held that RCW 19.190.040 "does not create an independent cause of action for monetary damages under CEMA" for non-phishing violations, but it added that "a recipient of unsolicited commercial text messages is not bereft of legal remedy—he or she may pursue redress under the CPA." *Id.* at 727–28. The defendant in *Wright* argued that RCW 19.190.040 "provides the measure of any damages recoverable under a CPA suit," and the court agreed that the provision creates no independent cause of action. *Id.* at 723.

eMortgage's first argument, that CEMA creates no "independent private cause of action for monetary damages arising from ordinary commercial text messages," Dkt. 15 at 12, therefore answers a claim the Complaint does not plead. Ms. Hussain does not contend that RCW 19.190.040 supplies a freestanding action. Count II pleads the CEMA violation as the predicate for *per se* CPA liability and invokes RCW 19.190.040 as the measure of recovery. Dkt. 1 ¶¶ 71, 73. To the extent

eMortgage reads the Complaint's citation to RCW 19.190.040 differently, the remedy is to construe the pleading in Ms. Hussain's favor, not to dismiss "with prejudice" a theory she has not asserted. Dkt. 15 at 3. The motion itself is inconsistent on the point: its introduction seeks dismissal only of "the direct CEMA damages claim in Count II," *id.*, while its argument section asks that "Count II should be dismissed in its entirety," *id.* at 13.

**2. *Wright* establishes injury and causation as a matter of law.**

eMortgage's second argument is that Ms. Hussain "fails to plead injury to business or property sufficient to support her CPA claim" because the Complaint alleges only invasion of privacy, annoyance, and harassment. Dkt. 15 at 13 (citing Dkt. 1 ¶ 51). That argument assumes a plaintiff must plead injury and causation apart from the CEMA violation itself. The Washington Supreme Court rejected this premise in *Wright* and concluded "that RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law." *Wright*, 189 Wn.2d at 732. The parties there did "not dispute that transmission of a text message in violation of CEMA establishes the first three elements" of a CPA claim, *id.* at 728, so a CEMA text-message violation, together with that holding, establishes all five. The court explained that "the legislature did not delineate between these specific types of injuries," *id.* at 731, and that courts "cannot add words or clauses" to the statute, *id.* at 729.

Federal courts in this District apply *Wright* as written. *See Littman*, 2026 WL 3150829, at *3 ("Littman correctly responds that the Washington State Supreme Court has made clear that a CEMA violation is a per se violation of the CPA, satisfying the injury and causation elements as a matter of law."); *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1003 (W.D. Wash. 2019) ("a plaintiff alleging a CEMA violation under RCW 19.190.030(1) need not allege injury or causation beyond the CEMA violation"). *Littman* declined to dismiss a CPA claim predicated on a CEMA violation; it was decided the day eMortgage filed its motion, and the motion does not cite

it. eMortgage's only contrary authority is *Meade v. Profusion Cosmetics Corp.*, 2026 WL 2098093, at *2 (W.D. Wash. July 16, 2026), which, by eMortgage's own description, "required a plaintiff asserting a CEMA-based CPA claim to plead injury to business or property and causation independently of the alleged statutory violation." Dkt. 15 at 13. A federal district court's decision cannot displace the Washington Supreme Court's construction of Washington law, and a requirement that a plaintiff plead injury and causation "independently of the alleged statutory violation" is exactly what *Wright* holds is unnecessary.

**3. Any deficiency could be cured by amendment.**

If the Court finds any aspect of Count II insufficiently pleaded, the proper course is dismissal without prejudice and with leave to amend, because leave is warranted unless "the pleading could not possibly be cured by the allegation of other facts." *Cirkul*, 2026 WL 1508003, at *6 (quoting *Doe*, 58 F.3d at 497).

**4. The Court Should Not Decline Supplemental Jurisdiction.**

eMortgage asks the Court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) "[i]f Count I is dismissed." Dkt. 15 at 13. That provision applies where a court "has dismissed all claims over which it has original jurisdiction." *Id.* at 13–14 (quoting 28 U.S.C. § 1367(c)(3)). For the reasons above, Count I should not be dismissed, so the premise of eMortgage's argument fails. Count II also arises from the same text messages as Count I. Dkt. 1 ¶¶ 40–42, 69–73. Efficiency and convenience favor resolving both counts together, and the Court should deny this request.

\\

\\

\\

\\

## V. CONCLUSION

For these reasons, the Court should deny eMortgage's Motion to Dismiss in its entirety. In the alternative, any dismissal should be without prejudice and with leave to amend.

DATED this 5th day of November, 2026.

Respectfully submitted,

*/s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA No. #46971
**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com

*I certify this memorandum contains 8,366 total words in compliance with LCR 7(d)(4).*

Anthony I. Paronich (*pro hac vice*)
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
anthony@paronichlaw.com

*Counsel for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Samuel J. Strauss, hereby certify that on November 5, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 5th day of November, 2026.

Respectfully submitted,

*/s/ Samuel J. Strauss*

Samuel J. Strauss, WSBA No. #46971
**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com